Gene W. JORDAN, d/b/a Tapia Construction Company, Appellant,

v.

William Robert RULE et ux., Appellees.

No. 16453.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 27, 1975.

Jordan, Zwernemann & Simmons, Donald H. Zwernemann, Houston, for appellant.

Bond & Falco, James B. Bond, Navasota, for appellees.

EVANS, Justice.

This is a venue case. Mr. and Mrs. Robert Rule brought this action in Grimes County, Texas against Gene W. Jordan, d/b/a Tapia Construction Company, alleging breach of a written construction contract entered into by Jordan "through his agent Tony Tofoya as Tapia Construction Company." The Rules alleged that the written contract bore Jordan's initialed approval and that it followed "numerous oral discussions and negotiations" between the parties. They alleged that under the written contract Jordan had agreed to construct a house at Blue Bonnet Country Subdivision in Grimes County according to their plans and specifications for a total contract price of $33,283.00 from which amount was deducted the sum of $500.00 as consideration for their having made a cash advancement of $15,000.00 at the time of the contract. They alleged that during the course of the progress of construction they paid Jordan additional sums of $5,000.00 and $10,000.00, making a total sum of $30,000.00 paid to him and that Jordan then failed to complete the construction of the house and abandoned performance under the contract.

In a nonjury hearing the trial court overruled Jordan's plea of privilege and sustained venue in Grimes County under the provisions of Article 1995, Subd. 5, Vernon's Tex.Rev.Civ.Stat.Ann. Under that subdivision, the Rules were required to prove that the contract sued upon had been entered into by Jordan or by one authorized by him or was assumed or ratified by him. 1 McDonald, Texas Civil Practice (rev. 1965), Sec. 4.11.1, p. 444.

In one point of error Jordan asserts that the Rules failed to prove he was a party to the contract sued upon or that he had entered the contract in person or through an agent authorized by him or that he assumed or ratified such contract.

The contract placed in evidence by the Rules is a typed letter agreement bearing the letterhead "Tapia Construction Company, Framing Contractor, Las Vegas, Nevada 702–731–1837", bearing picture of a house and name thereunder: "Tony Tapia." It was addressed to Mr. Bob Rule at an address on the Eastex Freeway in Houston, Texas and at the conclusion of the letter, over the typed name "Tapia Construction", there appears the signature of Tony Tofoya and under it the signature of Mr. Bob Rule. The body of the contract briefly provides that "Tapia Construction" agrees to construct one house at Blue Bonnet Country as a residence for Mr. and Mrs. Rule, makes reference to a cost breakdown submitted and approved by Rule and states that the house is to be built according to submitted plans and elevation drawing. The last line of the letter indicates a total contract price of $33,283.00 and under that sum in handwriting is a deduction of $500.00, indicating the net total price to be the sum of $32,783.00. Directly under that handwritten notation and opposite the signatures of Tofoya and Rule are

three initials identified to be those of Tofoya, Rule and Jordan.

■■ A written contract may within itself afford the highest evidence of the identity of the contracting parties and the terms of the agreement. Detroit Fidelity & Surety Company v. First National Bank, 66 S.W.2d 406 (Tex.Civ.App.—Fort Worth 1933, no writ). However, the fact that a principal's name is not designated in the instrument and that the agency of the signing party does not appear upon the face of the writing, is not conclusive evidence that the principal was not a contracting party. Restatement of The Law of Agency 2d, Sec. 149, p. 365.

■ Where the names of the contracting parties are not clearly indicated upon the face of the writing itself, parol testimony is generally admissible to show their identity and their agreed relationship to each other. Corbin on Contracts, Vol. II, Sec. 500, pp. 690–91. This is in keeping with the general rule that where the contract is ambiguous or incomplete, parol evidence of the circumstances surrounding its execution is admissible to render its terms certain and to clarify matters which are left in doubt by its wording. Myer v. Fruin, 16 S.W. 868 (Tex.1891); 13 Amer. Jur.2d, Building Contracts, Sec. 124, pp. 114–16.

In Lebow v. Weiner, 420 S.W.2d 755, 758 (Tex.Civ.App.—Houston [14th] 1967, no writ), Chief Justice Tunks stated:

"The real inquiry which a court must make in determining whether a party has signed a contract, is to determine whether he, or someone else at his discretion, placed a marking thereon with the intention to give vitality to the instrument . . .

.  .  .  .  .  .

"The fact that parol testimony is required to explain an ambiguity does not keep an instrument from being a contract in writing within the meaning of

Subdivision 5. Farmers' Seed & Gin Company v. Brooks, 125 Tex. 234, 81 S. W.2d 675."

There is no suggestion in the record that "Tapia Construction" or "Tapia Construction Company" was an incorporated entity.

Rule did offer evidence tending to show that Jordan and Tapia Construction Company were one and the same party. He testified that after his plans and specifications for the proposed house were drawn by the architect, he contacted Mr. Jordan, who through a third party had expressed interest in submitting a bid. Jordan and two other prospective builders were given the plans but Jordan's bid was accepted. Jordan, according to Rule's testimony, had stated several times that he wanted to build a number of houses in Blue Bonnet Country and wanted to use the Rules' home as a model of his construction.

Mr. Rule further testified that Jordan prepared the contract and that he was personally present when Mr. Jordan subscribed his initials to the contract. He said that all three parties signed the contract at the same time and that Mr. Tofoya was Mr. Jordan's framing contractor and was introduced by Mr. Jordan "as a builder from Las Vegas, a man who had built many houses." Mr. Rule testified that during prior conversations, Mr. Jordan had made it clear to him that he wanted to bid on the house to be constructed and that Jordan was furnished the plans and specifications. He testified that the contract was executed by Tapia Construction Company on behalf of Gene Jordan.

Mr. Rule further testified that after Mr. Jordan made his bid, he approached Mr. Rule about paying $15,000.00 of the contract price in advance. He testified that Mr. Jordan did not to his knowledge actually do any of the construction work on the house or supervise the construction or order materials for the job. The direction of the work was actually done by Tony Tofoya. He testified that when he made payments, including the cash advance, he

made them payable to Tapia Construction Company and gave the checks directly to Mr. Jordan. He stated that after he was introduced to Tofoya, Mr. Jordan still represented to him that he would be the contractor.

Mr. Jordan, called as an adverse witness, testified that he had signatory authority on an account of Tapia Construction Company at the First National Bank in Tomball, Texas. He stated that he was given this power because he had had accounting experience and Mr. Tofoya was not versed in keeping records. He said this was just an accommodation to Mr. Tofoya. He admitted that on the same date of the payment of the sum of $15,000.00 by Mr. Rule, he wrote a check on the Tapia Construction Company account for the amount of $17,000.00 payable to Blue Bonnet Farms. However, he denied that the $15,000.00 check was given to him directly, stating that it was given by Mr. Rule to Mr. Tofoya in his presence. Mr. Jordan admitted he had signed an earnest money agreement as buyer, under the name Tapia Construction Company requiring a cash downpayment of $18,000.00 on the same date that he wrote the $17,000.00 check on Tapia Construction Company's account. He said the land represented in the purchase contract was his but that he put it in the name of Tapia Construction Company so the agent could make a commission. He said he put the cash downpayment back in the Tapia Construction Company's account from his own personal funds. He said he initialed the $500.00 deduction on the contract "in the capacity as a witness."

Mr. Jordan denied that he had ever been a contractor in the construction business or that he had ever engaged in any business venture with Mr. Tofoya. He also testified he had not filed an assumed name certificate; however, there was no showing that anyone else had filed such a certificate on behalf of Tapia Construction Company. Neither was it shown who other than Jordan had power to sign checks on the Tapia Construction Company bank account.

No findings of fact or conclusions of law appear to have been made or requested. We are required to presume all essential findings to have been made by the trial court in support of its judgment. Lebow v. Weiner, supra. The trial court could have found from the evidence that Mr. Jordan either by placing his own initials on the contract or authorizing Tony Tofoya to sign on his behalf, intended to become a contracting party to the contract, or by his actions subsequent to its execution, assumed and ratified the contract. We find the evidence sufficient to sustain the presumed findings of the trial court and such findings are not against the great weight and preponderance of the evidence.

The judgment of the trial court is affirmed.